**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        Plaintiff,<br>vs.<br><br>**CHARLES CHANEY** and<br>ALEXIE ALFRED,<br><br>        Defendants. | 3:11-cr-010-HRH-JDR<br><br>**RECOMMENDATION**<br>**REGARDING**<br>**MOTION TO SUPPRESS**<br><br>(Docket No. 38) |

Defendant **Charles Chaney** moves to suppress evidence derived from the warrantless entry to arrest him and search his home including evidence derived from that entry. Docket 34. The motion is opposed by the government. Docket 43. An evidentiary hearing was conducted before the magistrate judge on April 14, 2011. Upon due consideration of the evidence adduced and the arguments of counsel the magistrate judge recommends that the court adopt findings of fact and conclusions

of law set forth below and that the motion to suppress be GRANTED in part and DENIED in part.

## Findings of Fact

On December 8, 2009, Jerry Herrod a police officer for the City of Bethel, Alaska, responded to a disturbance call at 543 7th Avenue in Bethel. While there he observed that his police vehicle was missing. Officer Herrod called the dispatcher and advised that his vehicle had been stolen. Inside the stolen vehicle were investigation items including an AR-15 rifle with a 14½ inch barrel. The AR-15 was concealed in a black padded case. The rifle had four 30-round magazines.

Lt. Achee of the Bethel Police picked up Officer Herrod and they began a search of the city but were unable to locate the vehicle in Bethel. Police officers in a village down river, Napaskiak, reported to dispatch that they had heard sirens and gun shots. They reported a four-wheeler following a vehicle. One of the officers contacted the persons on the four-wheeler and identified Charles Chaney Jr, (the defendant herein) along with a radar gun from Herrod's police vehicle. Napaskiak is about a ten minute drive from Bethel on the river when it is frozen as it was during this time of year.

Another report received by dispatch identified Chaney on a four-wheeler at Napakiak, a few minutes drive away from Napaskiak further down the river. These reports were received about an hour and a half after the vehicle was stolen.

Officers decided to locate Chaney's residence. They determined from APSIN that it was 841 6th Avenue, in Bethel. Chaney's residence was about one block away from where the police vehicle had been stolen. Officer Herrod, Officer Travis Wixom and Officer Anna Geomer went to Chaney's house. Initially they observed a red four-wheeler chained to the foundation of 841 6th Avenue and the engine hood was cold. On the other side of the house there was another red four-wheeler which was wet with water and the engine block was hot. On this four-wheeler the officers observed a radar gun from Herrod's vehicle strapped to the front of the four-wheeler.

The officers sat and observed the house for a few minutes. They could tell there were persons inside. They decided to knock on the door. A female answered and they announced they were police looking for Charles Chaney. The female stepped back and pointed into the living room and the officers made entry with guns drawn. The officers contacted Alexie Alfred in the living room and asked him where Charles Chaney was. He pointed to a back bedroom.

The officers did not have an arrest warrant or a search warrant. They decided to go into the house without a warrant because the village police officers had reported the police car down river along with gun shots, and after observing the radar gun on the four-wheeler at Chaney's residence they were concerned that

someone might have the AR-15 rifle inside. Officer Herrod testified that they were concerned that a person might use the rifle against them.

An officer knocked on the bedroom door where Alfred had pointed and announced "police." They observed Charles Chaney come out. At that time they detained him and he was handcuffed behind his back. They gave him the Miranda warnings and Chaney consented to speak with them.[1] The officers continued to ask him questions as they were advising him of his Miranda rights. They began to question Chaney about the incident. They asked him if they could look around the house and he gave consent. When the officers began to look around Chaney retracted his consent and the officers stopped their search.

The officers questioned other persons in the residence and observed in plain view a pair of police patrol gloves that Officer Herrod recognized as sitting on the chair. Officer Herrod also recognized some paperwork from his vehicle. The officers remained in the residence about 45 minutes to an hour.

Sgt. Chris Salyers directed the officers to remove Chaney from the residence. Chaney was placed in the back of a patrol vehicle and questioned further. There is no claim or showing that Chaney's statements made to the police in the police vehicle were the product of coercion. Chaney was told he was under arrest.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

While the officers were outside the house they did not hear any gunshots fired. They did not hear any people arguing or fighting. They heard no one shouting or calling for help. There was no indication that anyone was hurt nor did it sound like any property was being destroyed. Instead, they heard music playing inside and people talking. Officer Herrod characterized this as normal noise coming from a residence. The officers had received no report that Chaney had been seen driving the patrol car or that he had been seen possessing a weapon.

The residence had only one door. The residence is elevated on stilts about 6 to 8 feet high. From where the officers were located they could have seen anyone jump out a window or leave the residence. Bethel has a magistrate on duty 24-hours a day. Subsequent to the officers entry into the residence of Chaney, the police vehicle was found down river between Napaskiak and Napakiak.

## Discussion

<u>Entry into Residence</u>

Chaney argues that the warrantless non consensual police entry into his residence violated the Fourth Amendment. The Fourth Amendment to the U.S. Constitution protects against unreasonable searches and seizures. The government agrees that a warrantless search of a dwelling must be supported by probable cause and the existence of exigent circumstances. Docket 43, p.3. See <u>United States v. Struckman</u>, 603 F.3d 731, 739 (9th Cir. 2010).

Searches without a valid warrant are unreasonable unless shown to fall within one of the exceptions to the rule that a search must rest upon a valid warrant. The burden is on the officer to show that the search comes within an exception. Stoner v. California, 376 U.S. 483 (1964). A search cannot be justified by what it produces nor can an arrest be justified by the fruit of an illegal search. Johnson v. United States, 333 U.S. 10 (1948)(finding opium did not make search good); Wong Sun v. United States, 371 U.S. 471 (1963)(unlawful arrest not made good by finding heroin).

The burden of proof on a motion to suppress evidence obtained without a warrant is on the government. United States v. Jeffers, 342 U.S. 48 (1951). The government does not contest the defendant's standing to seek suppression of evidence obtained from his residence.

The parties dispute whether exigent circumstances existed for the Bethel police to enter Chaney's residence on December 8, 2009. To justify the warrantless entry into the residence the government must demonstrate probable cause to enter the residence as well as show the existence of exigent circumstances to excuse the lack of a warrant. The government must also show that a warrant could not have been obtained in time. United States v. Lindsey, 877 F.2d 777, 780 (9th Cir. 1989).

    A.    Probable Cause

Regardless of whether some exception to the warrant requirement existed the government must show that the officers had probable cause to enter the residence. United States v. Howard, 828 F.2d 552, 555 (9th Cir. 1987). Pursuant to Lindsey, supra, the court must make a "practical, common-sense decision" whether under the "totality of circumstances" known to the police officers at the time they entered the residence, there was a "fair probability" that contraband or evidence of a crime would be found inside. Illinois v. Gates, 462 U.S. 213, 238 (1983), or that the arrestee would be present to effect his arrest if they had probable cause to arrest him.

Due to the absence of exigent circumstances as discussed below this court need not determine whether at the time of their initial entry the police had probable cause to believe that evidence of stolen property or Chaney himself would be found at Chaney's home.

B. Exigent Circumstances

Under Ninth Circuit law exigent circumstances are defined as:

"those circumstances that would cause a reasonable person to believe that entry . . . was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the

suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." Lindsey, 780-781, quoting United States v. McConney, 728 F.2d 1195, 1199 (9th Cir.) (en banc), cert. denied 469 U.S. 824 (1984). The exigencies are viewed from the totality of the circumstances known to the officers at the time of the warrantless intrusion. United States v. Licata, 761 F.2d 537, 543 (9th Cir. 1985).

The government relies upon the following facts known to the Bethel police to constitute exigent circumstances: The officers knew that a firearm might be in the defendant's possession; they were concerned that if the defendant was inside with a dangerous weapon he could cause physical harm to police officers and other individuals; the officers had information that after the police vehicle was taken someone had fired a weapon possibly while driving the vehicle. The presence of a firearm alone is not an exigent circumstance justifying a warrantless entry into a person's home. United States v. Gooch, 6 F.3d 673, 680 (9th Cir. 1993). The officer's subjective beliefs are not material to the inquiry. Struckman, supra.

There was no evidence adduced at the hearing about anyone reporting to police that Chaney was seen driving the police vehicle or possessing a firearm. There is no evidence that the police knew that Chaney was inside the residence, until after they knocked on the door and spoke with someone inside. There is no evidence that Chaney knew the police were outside his residence or was likely to

flee before the officers could apply for a search warrant. There is no evidence that anyone was attempting to destroy evidence. The officers at the house did not hear any shots fired, fighting, arguments, call for help or any indication that someone was hurt. Instead, they heard music playing, talking and normal noise coming from the residence.

The officers had observed the residence for a few minutes before deciding what action to take. The residence was built on stilts about six to eight feet off the ground. Thus, the officers could have seen anyone attempting to leave the building.

Other police officers were available to surveil the residence while an application for a search warrant was made. Bethel had a state magistrate on duty twenty-four hours a day. The magistrate was available to issue a search warrant. I determine that the government has not shown that a warrant could not have been obtained in time.

To succeed in invoking the exigency or emergency exceptions to the warrant requirement, the government must show that a warrant could not have been obtained in time. <u>Struckman</u>, <u>supra</u> at 738. I conclude that the government has not shown the presence of a consequence that would improperly frustrate legitimate law enforcement efforts and justify an immediate warrantless entry. The government

has failed to meet its burden of demonstrating the presence of exigent or emergency circumstances for the warrantless entry.

The facts in Lindsey, supra, cited by the government, were significantly different. There, the court found that the police had reason to believe that if the co-operating source failed to return to the premise within a reasonable time those inside would be alerted to police intervention. The source had made a statement about guns and bombs inside and the police reasonably believed his statements. 877 F.2d at 781. Under the facts in Lindsey the Court of Appeals found that the possession of dangerous explosives and the likelihood of the suspects becoming increasingly suspicious justified the initial entry based on exigent circumstances. Lindsey, supra at 782.

    C.    Consequences of Unlawful Entry into Chaney's Residence

The fruits of the unlawful entry must be suppressed. Wong Sun v. United States, 371 U.S. 471 (1963). This includes what was observed in the residence in plain view. The police may not enter a suspect's home without a warrant to arrest absence exigent circumstances. Payton v. New York, 445 U.S. 573 (1980). Under the circumstances in this case evidence in plain view may not be seized. *Id.* The warrantless entry leads to the suppression of any evidence found, or statements taken, inside the home. Similarly, the officers' observations in the constitutionally protected area of the home may not be used to furnish probable

cause to obtain a warrant since the evidence was observed by officers who were not lawfully in that protected area. McDonald v. United States, 335 U.S. 451 (1948).

The mere giving of Miranda warnings did not dissipate the taint of the illegal entry and arrest so as to make the statements made during Chaney's detention inside the residence admissible. Brown v. Illinois, 422 U.S. 590 (1975).

An arrest based on probable cause but without a warrant or exigent circumstances made in a person's home, although a violation of the Fourth Amendment, does not require the suppression of statements made outside the home after compliance with Miranda. New York v. Harris, 495 U.S. 14 (1990). Harris explains that the rule of Payton v. New York, supra was designed to protect the physical integrity of the home not to protect against statements made outside the home.

### D. Search Warrant for 4BE 09-117 SW

Chaney argues state court Search Warrant 4BE09-117SW is fatally tainted by the use of evidence obtained from the earlier unlawful search of his Chaney's residence. The exclusionary rule reaches evidence later discovered and found to be derivative of an illegality or the "fruit of the poisonous tree." Nordone v. United States, 308 U.S. 338, 341 (1939). The question is whether the evidence subsequently obtained is the "fruit" of the prior illegality, namely whether the challenged evidence was obtained by exploitation of the initial illegality or instead by

means sufficiently distinguishable to be purged of the primary taint. <u>Segura v. United States</u>, 468 U.S. 796 (1984). In reviewing the sufficiency of the challenged search warrant this court must strike the unlawfully obtained facts from the application and examine whether the remaining facts still provide a substantial basis for a probable cause determination. <u>United States v. Bishop</u>, 264 F.3d 919, 924 (9th Cir. 2001).

The search warrant authorized a search of 841 C 6th Avenue, Bethel, Alaska, for a DPMS Ar15 semi-automatic rifle, serial number FE011645 with a 14½ inch barrel with four (30 round) magazines, black gloves, police department paperwork and items listed in an inventory list of Officer Harrod's items in the patrol vehicle as evidence of the crime of vehicle theft first degree (Alaska Statute 11.46.360(a)(1)(3). The warrant was issued on December 9, 2009 at 2:10AM by a Bethel Magistrate based upon the affidavit of Sgt. Chris Salyers. The search warrant was issued about eight hours after Officer Herrod reported his patrol vehicle missing.

The affidavit in support of the search warrant purged of the illegal facts stated the following grounds for issuance of the warrant:

> On December 8, 2009, about 5:56 PM Officer Jerry Herrod
> responded to a call for services located at 543 7th Avenue
> in Bethel. About 6:18 PM he noticed that his patrol car
> was missing. He reported this to dispatch and also

reported that equipment in his stolen vehicle included an AR15 semi-automatic assault rifle with a 14½ inch barrel and four (30 round) magazines.  Herrod advised dispatch to notify the surrounding villages in case the stolen patrol vehicle ended up there.

Dispatch advised that VPSO Larson called to report a vehicle on the river and that he was able to hear gun shots.  VPSO Larson also reported to dispatch that the vehicle was heading towards Napakiak being followed by a four-wheeler.

Other officers contacted a red Honda Rancher four-wheeler in Napakiak.  The driver of the four-wheeler was identified as Charles Chaney Jr.  During the contact Chaney asked VPSO Dull if they were there to arrest them.  There was another male on the back of the four-wheeler who was not identified.  The four-wheeler had a hand held radar unit on the front of it.  VPSO Dull advised dispatch that the individuals were heading for Bethel.

Officer Herrod learned through the records management (APSIN) that Chaney had a current address

of 841 C 6th Avenue in Bethel, Alaska. Officers responded to that location and then observed a red Honda four-wheeler that was warm to the touch parked at the residence. They also observed Officer Herrod's radar unit attached to the front rack of the ATV. The affiant had asked Officer Herrod if he had a radar unit in his vehicle and he confirmed that he did. Officer Herrod described the radar unit as a grey hand-held unit with a cigarette lighter plug in.

Unexplained possession of recently stolen property may support an inference that the possessor knew of its stolen nature. See <u>Federal Jury Practice and Instructions</u> Sixth Ed (2010) Sec. 59:16. See also <u>Jones v. United States</u>, 378 F.2d 340, 341 (9th Cir. 1967). There was sufficient probable cause for officers to believe that there might be recently stolen property at Chaney's residence. The term "recently" is a relative term with no fixed mean. An issuing magistrate could reasonably conclude that Chaney had been seen driving his four-wheeler with the radar unit attached "recently" after the theft of Officer Herrod's vehicle.

## Summary

The government relies upon an exception to the requirement for a search warrant based upon the presence of probable cause to search with exigent circumstances.

The warrantless entry into Chaney's residence was unlawful. Observations made by the officers in the residence including statements made by Chaney and others to the police must be suppressed. To that extent the motion to suppress should be granted. The search warrant affidavit, purged of information the officers learned upon their illegal entry, although bare bones, is sufficient for a finding of probable cause to support the search warrant. Statements made by Chaney outside the home need not be suppressed. New York v. Harris, supra. The Motion to Suppress should be denied as to evidence obtained under the search warrant and statements by the defendant after his removal from the residence. IT IS SO RECOMMENDED.

DATED this 19th day of April, 2011, at Anchorage, Alaska.

    /s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge

This recommendation is issued as a final report and recommendation. Pursuant to Rule 59(b)(3), Federal Rules of Criminal Procedure, any objections will be considered by the District Court Judge who will accept, reject, or modify the

recommendation, or resubmit the matter to the Magistrate Judge for additional consideration and recommendation. Failure to object in accordance with this rule waives a party's right to review.

Objections to this report and recommendation shall be served and filed no later than **CLOSE OF BUSINESS, April 29, 2011**. **Responses** to objections are **due by 3:00 p.m. on the second business day following entry of the objections**. Objections and responses shall not exceed 5 pages in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support.